

EXHIBIT 4



**Liberty Mutual Insurance**
Mailing Address (USPS): PO Box 5014, Scranton, PA 18505
Mailing Address (FedEx/UPS): 19 Bert Collins Dr, Throop, PA 18512

June 16, 2025 **Personal & Confidential**

VIA EMAIL & CERTIFIED MAIL

Decca Enterprises Inc dba Denny's Restaurant #7281
c/o Steve Kim
626 S Hill Park Drive
Puyallup, WA 98373
Via Email: steveyoungq@aol.com
RE:

| | |
|---|---|
| First Named Insured: | Decca Enterprises Inc dba Denny's Restaurant #7281 |
| Party Seeking Coverage: | Decca Enterprises Inc dba Denny's Restaurant #7281 |
| Plaintiff: | Hailey Beckham, individually and on behalf of those similarly situated |
| Claim No.: | 24264452 |
| Primary Policy No.: | BKS58944531 |
| Underwriting Company: | Ohio Security Insurance Company |
| Excess Policy No.: | ESO58944531 |
| Underwriting Company: | The Ohio Casualty Insurance Company |
| Court: | Washington State Superior Court for the County of Pierce |
| Case No.: | 24-2-05199-1 |
| Lawsuit Caption: | Hailey Beckham, individually and on behalf of those similarly situated vs Steve Y Kim; L and S LLC; Skyden Inc; SK Restaurants Inc; Seasky Inc; Decca Enterprise Inc |

Dear Mr. Kim,,

This letter confirms receipt of the above-referenced lawsuit ("Lawsuit"), in which Decca Enterprises Inc dba Denny's Restaurant #7281 (hereinafter "Decca") is named as a defendant.

As more fully described in this letter, Ohio Security Insurance Company (hereinafter "we", "our", "us" or "Ohio Security") and The Ohio Casualty Insurance Company (hereinafter "we", "our", "us" or "Ohio Casualty") denies coverage for the Lawsuit and will not participate in the defense of Decca or pay any settlements or judgments.

**<u>THE LAWSUIT</u>**

Certain unproven allegations are contained within the Complaint, generally including the conduct, facts, and circumstances surrounding the claim for damages and the prayer to the Court for relief. None of the alleged conduct, facts, or circumstances surrounding the claim has been proven and we do not suggest by this discussion that any will be in the course of this litigation. However, we discuss the general allegations to provide a framework within which to discuss the potential duty to defend and indemnify Decca in this matter.

The Lawsuit filed by Hailey Beckham (hereinafter "Plaintiff"), against Decca alleges that:

> Plaintiff Hailey Beckham individually and on behalf of all individuals currently or formerly employed by any restaurants/entities. owned by and/or operated by Defendant in Washington state at any time on or after December 26, 2020 in hourly-paid positions, brings this action for money damages and statutory penalties for

1

violations of Washington's Industrial Welfare Act ("IWA"), RCW 49.12, Minimum Wage Act ("MWA"), RCW 49.46, Wage Payment Act ("WPA"), RCW 49.48 and Wage Rebate Act ("WRA"), RCW 49.52.

Defendants Steve Y. Kim, hereafter "Kim," and through a scheme of numerous corporations and limited liability companies, including L and S, LLC, Skyden, Inc. S K Restaurants, Inc., Decca Enterprise, Inc., and Seasky, Inc., (collectively "Defendants") acting in concert, operate several restaurants in Washington under the trade name "Denny's" presumably pursuant to franchise or other agreements. Kim is an owner, officer, governor, vice principal, or agent of each and every aforementioned entity. Defendants acted directly or indirectly in matters related to the employment of Plaintiff and Class Members, including the formulation, propagation, and enforcement of policies and practices related to the payment of wages. The Defendants are employers for the purposes of the IWA, MWA, WPA and WRA.

Plaintiff Hailey Beckham is a resident of Puyallup, Washington and was employed by Defendant as an hourly restaurant worker at the Denny's restaurant located in Spanaway, Washington.

Pursuant to Washington Civil Rule ("CR") 23, Plaintiff brings this case as a class action against Defendant on behalf of all individuals employed by any restaurants owned by and/or operated by Defendant in Washington state in positions paid on an hourly basis at any time or on or after January 10, 2021.

Plaintiff and Class Members are or were employed by restaurants owned by and/or operated by Defendant in Washington state at any time on or after January 10, 2021 and were paid on an hourly basis.

Defendants created and maintained timekeeping systems, work schedules, staffing levels, job requirements and a working environment that discouraged Plaintiff and Class Members from taking rest and meal periods in compliance with Washington law.

At times, Plaintiff and Class Members were required to work more than three consecutive hours without a rest period.

Defendants did not ensure Plaintiff and Class Members received a ten-minute rest period on the employer's time for every four hours worked.

Defendants did not compensate Plaintiff and Class Members for an additional ten minutes of work for each instance it required them to work greater than three consecutive hours without a rest period, provided a rest period in a duration of less than ten minutes, or did not provide a rest period of at least ten minutes in duration for each four hours worked.

Plaintiff and Class. Members worked shifts greater than five hours in length and, at times, were not provided and did not waive their rights to meal periods in compliance with Washington law.

At times, Plaintiff and Class Members were not provided with meal periods between the second and fifth hour from the start of their shifts.

At times, Plaintiff and Class Members worked more than five consecutive hours without a meal period.

Defendants did not compensate Plaintiff and Class Members for an additional thirty minutes of wages for each time it failed to provide a meal period between the second and fifth hour from the start of their shifts and/or when Plaintiff and Class Members worked more than five consecutive hours without a meal period.

At times when total compensable time, including additional time to compensate for missed or otherwise noncompliant rest and meal periods totaled over forty in a workweek, Defendants did not pay one and one-half times the regular rate of pay for all hours over forty in a workweek.

Defendants violated the IWA and its implementing regulation by failing to ensure Plaintiff and Class Members received a ten-minute paid rest period for every four hours worked and by failing to keep records of the occurrence, time and duration of rest periods taken, by failing to implement a process for Plaintiff and Class Members to report missed or otherwise noncompliant rest periods and by creating work schedules, staffing levels and conditions of work that discouraged paid rest periods.

Defendants violated the MWA and WPA when it failed to compensate Plaintiff and Class Members for an additional ten minutes of work for each instance a rest period was not provided in compliance with IWA.

Defendants violated the IWA and its implementing regulation by failing to provide Plaintiff and Class Members with compliant thirty-minute meal periods and by creating work schedules, staffing levels and conditions of work that discouraged compliant meal periods.

Defendants violated the MW A and WPA when it failed to compensate Plaintiff and Class Members for thirty minutes of work for each instance a meal period was not provided in compliance with the IWA.

In weeks where the total number of compensable hours including additional compensable time Defendants' failure to provide rest periods and meal periods exceeded forty, Defendants violated the Washington State Minimum Wage Act, RCW 49.46.130, by failing to pay one and one-half times the regular rate of pay for those hours.

Defendants' failure to pay additional wages to compensate for meal and rest periods not provided in compliance with Washington law was not the result of administrative or clerical errors.

By the foregoing, Defendants' actions in failing to pay the additional wages to compensate for failing to provide meal and rest periods in compliance with Washington law constitutes willful withholding of wages due in violation of RCW 49.52.050 and 070.

Plaintiff brings forth Causes of Action of: (1) Classwide Failure to Ensure Rest Periods in Violation of the Washington Industrial Welfare Act and Failure to Compensate for Violations in Violation of the Washington Minimum Wage Act and Washington Wage Payment Act; (2) Classwide Failure to Provide Meal Periods in Violation of the Washington Industrial Welfare Act and Failure to Compensate for Violations of the Washington Minimum Wage Act and Washington Wage Payments Act; (3) Classwide Failure to Pay Overtime Wages in Violation of the Washington Minimum Wage Act; (4) Classwide Willful Withholding of Wages in Violation of the Washington Wage Rebate Act.

The Plaintiff prays for relief as follows: (A) Certification of this case as a class action pursuant to CR 23(a) and (b)(3); (B) Damages for unpaid wages in amounts to be proven at trial; (C) Exemplary damages in amounts equal to double the wages due to Plaintiff and Class Members pursuant to RCW 49.52.070; (D) Attorneys' fees and costs pursuant to RCW 49.46.090, 49.48.030 and 49.52.070; (E) Prejudgment interest pursuant to RCW 19.52.010; and (F) Such other and further relief as the Court deems just and proper.

The above summarizes the allegations in the Lawsuit. Please refer to the Lawsuit for the complete allegations.

## **THE POLICIES**

Ohio Security issued the following Commercial Package Policy to Decca, hereinafter "CGL Policy":

| | |
|---|---|
| Policy Number: | BKS589445313 |
| Effective Dates: | 8/8/2020 - 8/8/2023 (yearly consecutive policies) |
| Policy Limits: | Each Occurrence Limit - $1,000,000 |
| | Personal and Advertising Injury Limit - $1,000,000 |

General Aggregate Limit (Other than Products–Completed Operations) - $2,000,000
Products-Completed Operations Aggregate Limit - $2,000,000

The limits of the Policy may have been or will be reduced by other claims that have been paid or may be paid prior to the resolution of this matter. These limits are also subject to the **Non-Cumulation of Liability Limits Same Occurrence** under form **CG 84 99 08 09**.

The Commercial General Liability Coverage Form **CG 00 01 04 13** and applicable endorsements for the above stated policy periods states in relevant part as follows:

**SECTION I - COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
   …
   b. This insurance applies to "bodily injury" and "property damage" only if:

      1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      2) The "bodily injury" or "property damage" occurs during the policy period;
   …
2. **Exclusions**

   This insurance does not apply to:
   …
   e. **Employer's Liability**

      "Bodily injury" to:

      (1) An "employee" of the insured arising out of and in the course of:

         (a) Employment by the insured; or

         (b) Performing duties related to the conduct of the insured's business…
   …

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We have the right and duty to defend the insured against any "suit" seeking those damages.

However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

…

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

…

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

…

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

…

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material places on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your good, products or services for the purposes of attracting customers or supporters is considered an advertisement.

…

**3.** "Bodily Injury"[1] means physical injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease.

…

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

…

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

…

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

---

[1] As amended by **Commercial General Liability Extension** Endorsement – Form **CG 88 10 04 13**

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright or slogan in your "advertisement".

...

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. For the purposes of this insurance, electronic data is not tangible property.

For the purposes of this insurance, electronic data is not tangible property.
As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

*     *     *

The Commercial General Liability Policy incorporates the following endorsement (**CG 01 97 12 07**), which potentially applies to the facts of this matter:

### WASHINGTON CHANGES - EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Coverage A - Bodily Injury And Property Damage Liability (Section I - Coverages)**:

This insurance does not apply to:

"Bodily injury" to:

**1.** A person arising out of any:

    **a.** Refusal to employ that person;

    **b.** Termination of that person's employment; or

    **c.** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**2.** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **a., b. or c.** above is directed.

This exclusion applies:

**1.** Whether the injury-causing event described in Paragraphs **a., b. or c.** above occurs before employment, during employment or after employment of that person;

**2.** Whether the insured may be liable as an employer or in any other capacity; and

**3.** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

However, Paragraphs 1.a. and 2. of this exclusion do not apply if such "bodily injury" is sustained by any "employee" of the insured whose employment is subject to the Indus-trial Insurance Act of Washington (Washington Revised Code Title 51).

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Coverage B Personal Injury And Advertising Injury Liability (Section I - Coverages)**:

This insurance does not apply to:

"Personal and advertising injury" to:

**1.** A person arising out of any:

    **a.** Refusal to employ that person;

      **b.**      Termination of that person's employment; or

      **c.**      Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**2.**    The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in paragraphs **a., b. or c.** above is directed.

This exclusion applies:

**1.**    Whether the injury-causing event described in Paragraphs **a., b. or c.** above occurs before employment, during employment or after employment of that person;

**2.**    Whether the insured may be liable as an employer or in any other capacity; and

**3.**    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

However, Paragraphs 1.a. and 2. of this exclusion do not apply if such "personal and advertising injury" is sustained by any "employee" of the insured whose employment is subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

\*     \*     \*

The Policy also includes the following endorsement (Form **CG 84 99 08 09**) that potentially applies to the damages being sought in the Lawsuit, as follows:

## NON-CUMULATION OF LIABILITY LIMITS
## (SAME OCCURRENCE)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Paragraph **5.** Under **Section III - Limits Of Insurance:**

Non-Cumulation of Liability - Same Occurrence - If one "occurrence" causes "bodily injury" or "property damage" during the policy period and during the policy period of one or more prior, or future, general liability policies issued to you by us, then this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policies because of such "occurrence."

For purposes of this endorsement, the term "us" also includes all policies issued by any company within the Liberty Mutual Agency Markets division of Liberty Mutual Group.

\*     \*     \*

In addition, The Ohio Casualty Insurance Company issued the following Excess Liability Policy to Decca hereinafter "Excess Policy":

8

|                  |                                                    |
|------------------|----------------------------------------------------|
| Policy Number:   | ESO589445313                                       |
| Policy Period:   | 8/8/2020 - 8/8/2023 (yearly consecutive policies)  |
| Policy Limits:   | Each Occurrence - $5,000,000                        |
|                  | Aggregate (Where Applicable) - $5,000,000          |

The Excess Liability Coverage Form **CE 65 24 06 97** and applicable endorsements for the above stated policy periods states in relevant part as follows:

### INSURING AGREEMENTS

**I.     COVERAGE**

We will pay on behalf of the Insured the amount of "loss" covered by this insurance in excess of the "Underlying Limits of Insurance" shown in Item **5.** Of the Declarations, subject to **INSURING AGREEMENT** Section **II., Limits of Insurance.** Except for the terms, conditions, definitions and exclusions of this policy, the coverage provided by this policy will follow the "first underlying insurance."

…

**V.     DEFINITIONS**

**A.** "First underlying insurance" means the policy or policies of insurance stated as such in Item **5.** of the Declarations.

**B.** "Loss" means those sums actually paid in the settlement or satisfaction of a claim which you are legally obligated to pay as damages after making proper deductions for all recoveries and salvage.

**C.** "Underlying insurance" means "first underlying insurance" and all policies of insurance listed in Item **5.** of the Declarations.

**D.** "Underlying Limits of Insurance" means the total sum of the limits of all applicable "underlying insurance" stated in Item **5.** Of the Declarations, including self-insurance, or means other than insurance.

\*         \*         \*

The Policies are incorporated by reference into this letter in its entirety. Although we have attempted to include all of the policy provisions that we believe are pertinent, the provisions set forth above in no way replace the provisions of the actual Policies issued.  If you have any questions regarding the terms, definitions, exclusions, conditions, endorsements and/or limits of liability contained in the applicable Policies, you should refer to the Policies itself.  To the extent there is any discrepancy between this letter and the Policies, the Policies controls.

**APPLICATION OF POLICIES/COVERAGE POSITION**

Based upon the information available to date, the grounds for the denial of coverage under the Commercial General Liability portion of the Policy, or under applicable law, with respect to the Lawsuit, include, but are not limited to, the following:

**A. Commercial General Liability Coverage**

- The Policy provides Coverage A for claims of "bodily injury" and "property damage" caused by an "occurrence", all as defined in the Policy and outlined above. It is evident, based upon our review of the Lawsuit filed in this matter that the Plaintiff has not asserted any claims for "bodily injury" or "property damage" as those terms are defined. The Plaintiff does not allege physical injury, sickness, disease sustained

or any mental anguish or emotional distress as a result of any physical injury, and so the Policy's "bodily injury" coverage is not implicated. "Property damage" requires physical injury to tangible property or loss of use of tangible property. There is no allegation that anyone is seeking compensation for physical injury to any tangible property or loss of use of any tangible property. As such, there is no claim for "property damage". At this point, it also does not appear that Plaintiff is alleging an accident and there is little indication that the conduct alleged may have arisen out of an accident. As such, it appears that there has not been an "occurrence". Since the insuring agreement has not been met, there is no coverage applicable to this matter under **Coverage A Bodily Injury and Property Damage Liability**.

- The Policy also provides Coverage B for damages because of "personal and advertising injury" as defined by the Policy. In the instant matter, there are no allegations seeking damages as a result of an enumerated "personal and advertising injury" offense committed by the insured. Since the insuring agreement has not been met, there is no coverage applicable to this matter under **Coverage B Personal and Advertising Injury Liability.**

- Even if there was an "occurrence" that resulted in "bodily injury" or "property damage" (which there is not) the General Liability coverage is negated with the Employer's Liability exclusion to the extent any "bodily injury" is alleged. In addition, the Washington Changes - Employment-Related Practices Exclusion (**CG 01 97 12 07**) expressly excludes "bodily injury" or "personal and advertising injury" for claims arising out of employment-related practices.

### B. Excess Liability Coverage

Based upon the information available to date, the grounds for the denial of coverage under the Excess Liability Coverage Form, or under applicable law, with respect to the Lawsuit, include, but are not limited to, the following:

- The Excess Liability Coverage Form Insuring Agreements state in relevant part that Coverage exists under the Excess Policy for "loss" in excess of the "Underlying Limits of Insurance" shown in Item 5. of the Declarations. They also state that except for the items, conditions, definitions and exclusions of this policy, the coverage provided by this policy will follow the "first underlying insurance." Since this matter does not involve "loss" in excess of the "Underlying Limits of Insurance" shown in Item 5. Of the Declarations and this coverage follows form with the "first underlying insurance", the Insuring Agreements are currently not met and there is no coverage under the Excess Policy.

### <u>CONCLUSION</u>

- In view of the allegations of the claim and the terms of the above-referenced policies, such policies provide no coverage for the claims against Decca in this claim.

- Based on these grounds, we will not participate in the defense of Decca for the Lawsuit or pay any amounts in settlement of the Lawsuit or to satisfy any settlement achieved or judgment rendered against Decca in the Lawsuit.

While we have sought to identify and address above all relevant insurance coverage considerations, the foregoing specificity is not intended and should not be construed as a waiver of any other right or basis which we may have to deny coverage, and we reserve all rights in this regard.

If you have questions or concerns about the actions of your insurance company or agent, or would like information on your rights to file an appeal, contact the Washington state Office of the Insurance Commissioner's consumer protection hotline at 1-800-562-6900 or visit www.insurance.wa.gov. The insurance commissioner protects and educates insurance consumers, advances the public interest, and provides fair and efficient regulation of the insurance industry.

If you have any facts or other information that you believe may impact our coverage position, we request that you bring such information or pleadings to my immediate attention, so that we may evaluate same and assess whether such information or pleading impacts our coverage position or obligations.  Finally, if you receive an amended Lawsuit, please provide us with a copy for our review.

Should you have any questions or comments concerning this letter, please feel free to contact me at 414-290-4498 or Andrew.Styles@Libertymutual.com.

Sincerely,

*Andrew Styles*

Andrew Styles | AIC, AIM, ACS, AINS, AIS
Senior Claims Resolution Specialist III
Liberty Mutual Insurance
US Retail Markets
Business Lines – Specialty


CC:     Anderson & Black Insurance
        c/o April Smith 16403 Broadway Ave,
        Snohomish, WA 98296
        Via Email : aprils@andersonandblack.com

CC:     Dunlap Bennett & Ludwif
        c/o Dubs Herschlip 627 5th Street Suite
        203 Mukilteo, WA 98275
        Via Email: dubs@dbllawyers.com